UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Twyla Leach (Martin) d/b/a Home Care Staffing, | Civ. No. 25-3220 (PAM/SGE) |
| Plaintiff, | **MEMORANDUM AND ORDER** |
| v. | |
| Minnesota Department of Human Services, UCare Minnesota, and HealthPartners, Inc., | |
| Defendants. | |

This matter is before the Court on Plaintiff Twyla Leach (Martin) d/b/a Home Care Staffing's Motion for a temporary restraining order.[1] For the following reasons, the Motion is denied.

**BACKGROUND**

Plaintiff Twyla Leach (Martin) d/b/a Home Care Staffing is enrolled as a Minnesota Health Care Programs provider, approved to provide housing stabilization services under Minn. Stat. § 265B.051. (Decl. of Melanie LaBrie (Docket No. 50) ¶ 2.) Defendant Minnesota Department of Human Services ("DHS") is a state agency responsible for administering Medicaid in Minnesota. (Am. Compl. (Docket No. 39) ¶ 11.) Defendants UCare Minnesota and HealthPartners, Inc. are managed-care organizations that contract

---

[1] Plaintiff styles her Motion as one for a temporary restraining order. Because Defendants received notice of the Motion and had an opportunity to respond, the Court will treat the Motion as one for a preliminary injunction. See Fed. R. Civ. P. 65(a)–(b).

with DHS to administer payments to vendors and seek Medicaid reimbursements. See Minn. Stat. § 256B.064, subd. 1b.

Federal and state law require the DHS commissioner to withhold payments to a Medicaid provider if DHS determines that there is a "credible allegation of fraud" while an investigation is pending. Id. § 256B.064, subd. 2(b); see 42 C.F.R. § 455.23(a)(1). The withholding period ends when "the commissioner determines there is insufficient evidence of fraud by the vendor, or after legal proceedings relating to the alleged fraud are completed." Minn. Stat. § 256B.064, subd. 2(d).

In summer 2025, DHS determined that there is a credible allegation of fraud against Plaintiff for overbilling, and DHS is investigating that potential fraud. (LaBrie Decl. ¶ 6.) DHS also referred the matter to law enforcement, which is also investigating Plaintiff. (Id.) On August 1, 2025, DHS sent Plaintiff a "Notice of Payment Withold," informing her that a temporary withholding would begin on that date and "continue until DHS or a prosecuting authority determines that there is insufficient evidence of fraud, or until legal proceedings related to the alleged fraud are complete." (Id. Ex. C at 1.) Because DHS "placed a hold" on Plaintiff, HealthPartners and UCare suspended payments to Plaintiff, as required by law. (Aff. of Martin J. Michael (Docket No. 53) ¶¶ 4–5; Def. UCare's Mem. in Opp'n (Docket No. 56) at 4.) Plaintiff exercised her right to submit written evidence to DHS demonstrating that the temporary withhold should be lifted. (LaBrie Decl. ¶ 13.) DHS reviewed the materials and upheld the temporary withhold. (Id. ¶¶ 15–16.)

This lawsuit followed. Plaintiff alleges claims for unjust enrichment, violations of federal Medicaid laws, a violation of due process against DHS, and claims of breach of

2

contract against UCare and HealthPartners and tortious interference with contract against DHS. Plaintiff moves for emergency injunctive relief, and although the Motion does not state explicitly the relief she seeks, in the Amended Complaint, Plaintiff asks that the Court: (1) enjoin Defendants from continuing to withhold payments from her, (2) order that all withheld payments be immediately released to her, (3) enjoin the agencies investigating Plaintiff from contacting her clients, and (4) declare that the temporary withholding of payments violates the Due Process Clause of the United States Constitution and federal laws governing Medicaid. (Am. Compl. at 8.[2]) Plaintiff also seeks to supplement her Amended Complaint. The Court will discuss the Motions in turn.

**DISCUSSION**

**A.    Standing**

Article III of the United States Constitution limits the jurisdiction of federal courts to justiciable cases and controversies. U.S. Const. art. III, § 2; Lujan v. Defenders of Wildlife, 504 U.S. 555, 559–60 (1992). Standing is an "essential and unchanging part of the case-or-controversy requirement of Article III." Lujan, 504 U.S. at 560 (citation omitted). To satisfy Article III standing requirements, a plaintiff must demonstrate:

> (1) [she] has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

---

[2]    This citation refers to the ECF page number.

Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc., 528 U.S. 167, 180–81 (2000) (quotations omitted). Whether the plaintiff has established the three elements of standing is an "inescapable threshold question." Advantage Media, L.L.C. v. City of Eden Prairie, 456 F.3d 793, 799 (8th Cir. 2006) (citing Lujan, 504 U.S. at 560). If a plaintiff lacks standing, the court has no subject-matter jurisdiction and must dismiss the claim. See Fed. R. Civ. P. 12(h)(3).

UCare argues that Plaintiff lacks standing to bring her claims against it because she cannot show that "UCare's ministerial compliance" with DHS's legal requirement to withhold payments is an injury traceable to UCare. (Def. UCare's Mem. in Opp'n at 5.) Plaintiff does not respond to UCare's argument and thus appears to have waived any objection to it.

The Court concludes that Plaintiff has not established standing as to her claims against UCare or HealthPartners. Therefore, the Court denies Plaintiff's Motion for injunctive relief as to those Defendants and dismisses the claims against them, as the Court lacks subject-matter jurisdiction. Even if Plaintiff established standing, her Motion would fail regarding UCare and HealthPartners, as described below.

B.   **Younger Abstention**

In Younger v. Harris, 401 U.S. 37 (1971), and its progeny, the Supreme Court has made clear that lower federal courts must decline to hear challenges to pending state actions involving important state interests. See, e.g., Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982) (dismissal appropriate in light of pending attorney disciplinary proceeding); Moore v. Sims, 442 U.S. 415 (1979) (dismissal

4

appropriate in light of pending child custody proceedings). The principles espoused in Younger are often referred to as the "Younger abstention doctrine." The Younger doctrine applies when (1) there are ongoing state proceedings involving the same or related matters to the federal proceeding; (2) those proceedings involve important state interests; and (3) the federal court plaintiff has an adequate opportunity to raise questions of federal law in the state proceedings. Middlesex Cnty. Ethics Comm., 457 U.S. at 432.

Defendants UCare and HealthPartners argue that the Younger abstention doctrine prevents the Court from taking action here. The Court disagrees. Although the state is investigating Home Care Staffing for allegations of fraud, both civilly and criminally, there exists no underlying state judicial proceeding, although that may change pending the results of the investigations. Additionally, DHS lacks the authority to hear or resolve the constitutional claims Plaintiff raises. See Minn. Stat. § 256.01, subd. 2 (list of the DHS commission's powers and duties does not include adjudicating constitutional issues). Thus, the Court determines the Younger abstention is inapplicable here.

Although Plaintiff argues that the Younger abstention does not apply, the Court reached its conclusions separately from Plaintiff's arguments, as the Court is gravely concerned with Plaintiff's briefing on the subject. (Docket No. 77.) A legal citation provided in Plaintiff's supplementary memorandum includes a quotation not found within the case cited, nor could the Court locate the quotation elsewhere. With the proliferation of litigants employing artificial intelligence to assist in legal research, the Court strongly cautions Plaintiff against using such research tools to provide inaccurate information to the Court. In this instance, the Court extends leniency as Plaintiff is proceeding pro se;

5

however, the Court will strike any further submissions that include what appear to be hallucinated citations or quotations and may take further action as appropriate.

## C. Motion for Preliminary Injunction

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008) (citation omitted). When deciding whether to issue a preliminary injunction, courts consider four factors: (1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance of harm the injunction would have on the movant and the opposing party; and (4) the public interest. Dataphase Sys., Inc. v. CL Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981). While no factor is dispositive, "the absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied." Barrett v. Claycomb, 705 F.3d 315, 320 (8th Cir. 2013) (quoting CDI Energy Srvs., Inc. v. West River Pumps, Inc., 567 F.3d 398, 402 (8th Cir. 2009)).

### 1. Likelihood of Success on the Merits

To demonstrate a likelihood of success on the merits, Plaintiff must establish that she has a "fair chance of prevailing" on a claim. Planned Parenthood of Minn., N. Dak., S. Dak. v. Rounds, 530 F.3d 724, 732 (8th Cir. 2008). Plaintiff submits no evidence to show that she is likely to prevail on any claim. Plaintiff does not dispute that she is under investigation for fraud. Rather, she attempts to litigate any potential underlying fraud in this court, where that is not at issue. The law requires DHS to "suspend all Medicaid payments to a provider after [DHS] determines there is a credible allegation of fraud for

6

which an investigation is pending under the Medicaid program against an individual or entity unless [DHS] has good cause to not suspend payments or to suspend payment only in part." 42 C.F.R. § 455.23(a)(1).  Plaintiff fails to provide any authority to support that the Court could order injunctive relief under these circumstances, nor could she do so, as no such authority exists.  The Court cannot order injunctive relief that conflicts with the law.  This alone dooms Plaintiff's Motion.

In any event, the sparse facts alleged in the Amended Complaint do not identify the elements of any of Plaintiff's claims and are devoid of any mention of Defendants' specific conduct that allegedly violated the law.  Further, Plaintiff provides no support for her argument that 42 U.S.C. § 1396a or the various federal regulations under which she brings her claims allow for a private right of action.  Plaintiff fails to provide any support for her claims that Medicaid providers have a protected property interest in Medicaid payments while an underlying fraud investigation is ongoing.  And she provides no basis to bring constitutional claims against private entities—UCare and HealthPartners—and does not allege that they acted under the color of law.  Moreover, neither her Motion for a temporary restraining order nor her reply memorandum mention any of the claims in her Amended Complaint, instead asserting bald conclusions about the four Dataphase factors.  Plaintiff utterly fails to show a likelihood of success on the merits.

2. **Irreparable Harm**

"Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 319 (8th Cir. 2009).  "[T]o demonstrate

7

irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." Novus Franchising, Inc. v. Dawson, 725 F.3d 885, 895 (8th Cir. 2013) (quoting Iowa Utils. Bd. v. Fed. Commc'ns Comm'n, 109 F.3d 418, 425 (8th Cir. 1996)). "Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003) (citing Adam–Mellang v. Apartment Search, Inc., 96 F.3d 297, 299 (8th Cir. 1996)).

Plaintiff argues that irreparable harm has occurred because she has suffered economic injuries, including unpaid claims, lost revenue, and business hardship. But "economic loss does not, in and of itself, constitute irreparable harm . . . . Recoverable monetary loss may constitute irreparable harm only where the loss threatens the very existence of the [plaintiff]'s business." Packard Elevator v. I.C.C., 782 F.2d 112, 115 (8th Cir. 1986). Since DHS began withholding payments, Plaintiff has submitted 36 new claims for reimbursement in a total amount of $9,936.13. (La Brie Decl. ¶¶ 10, 12.) The withhold does not prevent Plaintiff from continuing to provide services to Medicaid and non-Medicaid clients, it only prevents her from receiving Medicaid funds to reimburse her services during the withhold period. (Id. ¶ 9.) She projects that her business could fail because of the withhold, but that is mere speculation. A court may only order injunctive relief if the plaintiff demonstrates that the threat of injury is "real and immediate." O'Shea v. Littleton, 414 U.S. 488, 496 (1974). If the investigation concludes without any finding of wrongdoing, all of the withheld payments will be later issued to Plaintiff. (LaBrie Decl. ¶ 11.)

Further, Plaintiff argues that irreparable harm has occurred because her clients are suffering as they are not receiving the housing services she provides. Although Plaintiff contends that her clients will be harmed in the absence of injunctive relief, "[t]he irreparable-harm analysis focuses on the <u>moving</u> party, not the nonmoving party <u>or some third party</u>." <u>Kansas v. United States</u>, 124 F.4th 529, 534 (8th Cir. 2024) (emphases in original) (quoting <u>Walsh v. Ahern Rentals, Inc.</u>, No. 21-16124, 2022 WL 118638, at *2 n.2 (9th Cir. Jan. 12, 2022)). Plaintiff fails to demonstrate irreparable harm.

### 3. Balance of Harms and Public Interest

The remaining <u>Dataphase</u> factors weigh sharply against the relief Plaintiff seeks as she has not demonstrated that the balance of harms or public interest weigh in favor of issuing an injunction. Plaintiff fails to provide any reason why the difficulties she faces due to her own business decisions outweigh the harm that Defendants would incur should the Court order that payments be released to her. Also, there is no doubt that the public interest heavily weighs in favor of protecting against fraud in government programs and courts upholding clearly enunciated statutory authority to monitor the same. Plaintiff's conclusory allegations fail to meet the high burden to warrant emergency injunctive relief, and the Court denies her Motion.

### D. Motion to Amend

Rule 15 allows a court to "permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Plaintiff seeks to amend her pleadings to include documents drafted after this lawsuit began, expert reports created for this litigation, and a

"Report on Exhibits J-S for Supplemental Critical Evidence" that she appears to have drafted. These documents are plainly not those contemplated by the Rule and Plaintiff's Motion to Supplement Evidence is denied.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that:**

1. Plaintiff's Addendum and Renewed Motion for Temporary Restraining Order (Docket No. 41) is **DENIED**;

2. Plaintiff's claims against Defendants UCare and HealthPartners are **DISMISSED** as the Court lacks subject-matter jurisdiction;

3. Defendants UCare and HealthPartners' Motions to Dismiss (Docket Nos. 63, 73) are found as **MOOT**; and

4. Plaintiff's Motion to Amend (Docket No. 45) is **DENIED**.

Dated: <u>October 17, 2025</u>　　　　　　　　　　　　　*s/ Paul A. Magnuson*
　　　　　　　　　　　　　　　　　　　　　　　　　　Paul A. Magnuson
　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Court Judge