UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Twyla Leach (Martin) d/b/a Home Care Staffing, | Civ. No. 25-3220 (PAM/SGE) |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| Minnesota Department of Human Services by and through Attorney General Keith Ellison, | |
| Defendants. | |

This matter is before the Court on Defendants Minnesota Department of Human Services and Attorney General Keith Ellison's Motion to Dismiss. (Docket No. 66.) For the following reasons, the Motion is granted.

**BACKGROUND**

The full factual background has been set forth previously and will not be repeated. (See Ord. Denying Mot. for Prelim. Inj. (Docket No. 86) at 1–3.) In brief, Plaintiff Twyla Leach (Martin) d/b/a Home Care Staffing is enrolled as a Minnesota Health Care Programs provider, approved to provide housing stabilization services under Minn. Stat. § 265B.051. (Decl. of Melanie LaBrie (Docket No. 50) ¶ 2.) Defendant Minnesota Department of Human Services ("DHS") is a state agency responsible for administering Medicaid in Minnesota. (Am. Compl. (Docket No. 39) ¶ 11.) Plaintiff brings her claims against the state "by and through Attorney General Keith Ellison."

Federal and state law require the DHS commissioner to withhold payments to a Medicaid provider pending an investigation if DHS determines that there is a "credible allegation of fraud." Minn. Stat. § 256B.064, subd. 2(b); see 42 C.F.R. § 455.23(a)(1). The withholding period ends when "the commissioner determines there is insufficient evidence of fraud by the vendor, or after legal proceedings relating to the alleged fraud are completed." Minn. Stat. § 256B.064, subd. 2(d).

In summer 2025, DHS determined that there was a credible allegation of fraud against Plaintiff for overbilling and began an investigation. (LaBrie Decl. ¶ 6.) DHS also referred the matter to law enforcement, which also began investigating Plaintiff. (Id.) On August 1, 2025, DHS sent Plaintiff a "Notice of Payment Withold," informing her that a temporary withholding would begin on that date and "continue until DHS or a prosecuting authority determines that there is insufficient evidence of fraud, or until legal proceedings related to the alleged fraud are complete." (Id. Ex. C at 1.) Due to the hold, the organizations that contract with DHS to administer payments and reimbursements suspended payments to Plaintiff.

This lawsuit followed. Plaintiff alleges claims for unjust enrichment, unspecified illegal retaliation, and violations of the Constitution and federal Medicaid laws.

**DISCUSSION**

**A.     Defendants' Motion to Dismiss**

DHS and Ellison move to dismiss this matter because the Court lacks subject-matter jurisdiction over Plaintiff's claims and the Amended Complaint fails to state a claim upon which relief can be granted.

1. **Subject-Matter Jurisdiction**

The Court lacks subject-matter jurisdiction to hear Plaintiff's claims. A motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) may challenge the complaint either on its face or on the "factual truthfulness of its averments." Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993). When a defendant challenges the complaint on its face, the Court reviews the pleadings and affords a plaintiff the same protections that he or she would receive on a Rule 12(b)(6) motion to dismiss. See Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990). The Court takes the factual allegations as true and will only dismiss a complaint if a plaintiff fails to allege an essential element for subject-matter jurisdiction. See Titus, 4 F.3d at 593.

The Eleventh Amendment states that "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ." U.S. Const. amend. XI. The Court must dismiss a lawsuit barred by the Eleventh Amendment for lack of subject-matter jurisdiction. Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 64–65 (1996). "[I]n the absence of consent[,] a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). As a state agency, DHS is immune from suit, and Plaintiff provides no evidence that Congress or the State of Minnesota has waived the State's immunity.

Plaintiff's claims against Ellison in his official capacity are also barred.[1] Eleventh Amendment immunity extends to state officials, because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office [and] . . . is no different from a suit against the State itself." Will v. Michigan Dep't. of State Police, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Plaintiff's claims against Ellison are in fact claims against the State of Minnesota and, as established above, Minnesota has not waived immunity or otherwise consented to suit. Further, neither Minnesota nor Ellison acting in his official capacity are "persons" under § 1983. See id.

Therefore, the Court grants Defendants' Motion for lack of subject-matter jurisdiction.

### 2.    Plaintiff's Response in Opposition[2]

The Court must address the misrepresentations and fabrications that Plaintiff has submitted. After Plaintiff included what seemed to be a hallucinated citation in support of her motion for a preliminary injunction, the Court, in denying her motion, cautioned of its intent to "strike any further submissions that include what appear to be hallucinated

---

[1]    Plaintiff has not alleged any individual-capacity claims against Ellison, nor has she put him on notice that he has been sued in his individual capacity. Ellison does not waive service.

[2]    The Court construes Plaintiff's Motion to Deny Defendant's Motion to Dismiss (Docket No. 78) as a responsive memorandum in opposition to Defendant's Motion. Thus, Docket No. 100 is an improper sur-reply and will not be considered. See D. Minn. LR 7.1. Plaintiff asks for the Court's lenience as she is proceeding pro se, and the Court has indeed granted as much to Plaintiff. (See Ord. Denying Mot. for Prelim. Inj. at 5–6.)

citations or quotations" and warned that it "may take further action as appropriate." (Ord. Denying Mot. for Prelim. Inj. at 6.)

Plaintiff did not heed the Court's instruction, as her response to Defendants' Motion includes two statements that could be generously construed as gross misinterpretations and aptly considered violations of Rule 11(b) of the Federal Rules of Civil Procedure. First, she asserts that "[u]nder 42 C.F.R. § 455.23(a)(1), a State may deem an allegation credible only after careful review of all allegations, facts, and evidence on a case-by-case basis." (Docket No. 78 at 1.) Plaintiff distorts the statute, which does not include a description about when a state may "deem an allegation credible." Rather, it dictates that a state agency "must suspend all Medicaid payments to a provider after the agency determines there is a credible allegation of fraud for which an investigation is pending under the Medicaid program . . . unless the agency has good cause to not suspend payments or to suspend payment only in part." 42 C.F.R. § 455.23(a)(1).

Second, Plaintiff references a "CMS State Medicaid Director Letter (SMD #11-004, Mar. 25, 2011)," arguing that it "explicitly states that data-mining results alone are not proof of fraud and cannot justify withholding without corroborating evidence." (Docket No. 78 at 1.) No such letter exists. Defendants indicate that the Centers for Medicare and Medicaid Services ("CMS") issued a letter identified as "SMD #11-004," but it was written on a different date, May 18, 2011.[3] (Docket No. 96 at 7.) The May 18 letter is silent as to

---

[3] The letter is available for public download at https://downloads.cms.gov/cmsgov/archived-downloads/SMDL/downloads/SMD11004.pdf (last accessed Dec. 18, 2025).

5

data mining and instead discusses using administrative funds in a Medicaid incentive program. Given these significant falsehoods, the Court finds it necessary to strike Plaintiff's opposition memorandum.

Pro se litigants are not exempt from adhering to the Federal Rules of Civil Procedure. The Court cannot prove, but strongly suspects, that Plaintiff used artificial intelligence to draft her memoranda and did not verify the sources generated. No matter how Plaintiff discovered the sources cited, her misrepresentations violate the Court's trust. "Federal courts have neither the time nor the resources to ensure the accuracy of every representation and every citation in every document put before them by every litigant." Turnage v. Associated Bank, N.A., Civ. No. 25-3004, 2025 WL 3052638, at *3 (D. Minn. Sept. 12, 2025) (Tostrud, J.).

Rule 11 of the Federal Rules of Civil Procedure permits a court to sanction an attorney or a pro se litigant who proffers unwarranted legal contentions or insupportable factual assertions in a filing. Here, the Court exercises its broad discretion to determine that sanctions are appropriate, because the Court previously warned Plaintiff against submitting hallucinated citations to the Court. See Fed. R. Civ. P. 11(c). Rather than imposing monetary sanctions, the Court imposes filing restrictions. To ensure Plaintiff's future compliance with the Rule, the District of Minnesota will review any lawsuit by Plaintiff before it is filed. If the Court finds that Plaintiff's citations are fabricated or grossly mispresent the purported source, Plaintiff will be prohibited from proceeding with the lawsuit.

**B.** **Plaintiff's Motions**

Plaintiff asks for leave to file additional documentation to provide information about DHS terminating the Housing Stabilization Services program—in effect, Plaintiff seeks to amend the pleadings. (Docket No. 97.) The termination of the program does not bear on this matter and thus falls beyond Rule 15's scope. See Fed. R. Civ. P. 15(d). Therefore, the Court denies Plaintiff's Motion for Leave to File Supplemental Declaration and Supplemental Reply.

Finally, the Court denies Plaintiff's Motion for Court Clarification. (Docket No. 103.) As explained above, although Plaintiff is proceeding pro se, she must abide by the Federal Rules of Civil Procedure, the District's Local Rules, and the Minnesota Rules of Professional Conduct. The Court will not entertain her request to advise her on prosecuting her case.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that:**

1. Defendants' Motion to Dismiss (Docket No. 66) is **GRANTED**;

2. This matter is **DISMISSED with prejudice**;

3. Plaintiff's Motion to Deny Defendants' Motion (Docket No. 78) is **DENIED**;

4. Plaintiff's Motion for Leave to File Supplemental Declaration and Supplemental Reply (Docket No. 97) is **DENIED**;

5. Plaintiff's Motion for Court Clarification (Docket No. 103) is **DENIED**; and

6. Plaintiff is **RESTRICTED** from initiating new litigation in the District of Minnesota unless she is represented by counsel or receives the advance permission of a judicial officer of this District.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: December 24, 2025

s/ *Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge